DECISION
{¶ 1} Relator, Newell Rubbermaid, Inc., has filed this original action in mandamus, requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting R.C. 4123.56(B) wage loss compensation to respondent-claimant, Nancy Dilucca, for the period April 7, 2000, through October 31, 2000, and to enter an order denying said compensation.
 {¶ 2} This court referred the matter to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate recommended that this court deny relator's request for a writ of mandamus. Relator has filed objections to the magistrate's decision, and the matter is now before this court for independent review.
 {¶ 3} Regarding a writ of mandamus, the Ohio Supreme Court, inState ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76, 78-79, has stated the following:
The extraordinary writ of mandamus may only issue if relator has demonstrated a clear legal right to the relief sought. Such demonstration is predicated upon an abuse of discretion by the Industrial Commission which, in turn, may be established only if the record is devoid of some evidence to support the commission's order.
(Citations omitted.) Based on the following, we find that the record is not devoid of some evidence to support the commission's July 23, 2002 order. Consequently, we find that the commission did not abuse its discretion, we overrule relator's objections, and we adopt the recommendation of the magistrate and deny relator's request for a writ of mandamus.
 {¶ 4} "A claim for wage loss compensation has two components — actual wage loss and causal relationship between the allowed condition and the wage loss." State ex rel. Watts v. Schottenstein StoresCorp. (1993), 68 Ohio St.3d 118, 121. In other words, a claimant must prove, in addition to a reduction in earnings, that the allowed condition was the cause of that reduction. "There are a variety of ways to establish this causal link, depending on the circumstances. * * * Nonetheless, it remains claimant's burden to prove that the reduction in earnings * * * was caused by the medical restrictions rather than other causes." State ex rel. Jordan v. Indus. Comm., Franklin App. No. 02AP-1110, 2003-Ohio-2945, at ¶ 32. Relator argues that respondent did not prove the necessary causal connection between the injury and the reduction in earnings.
 {¶ 5} One way to establish causation is to show that, on account of the injury, claimant, who worked overtime prior to the injury, has moved to a position without the possibility of overtime. See State ex rel.Jordan v. Indus. Comm., Franklin App. No. 02AP-1110, 2003-Ohio-2945, at ¶ 34. Another way to establish causation is to present evidence that, on account of the injury, claimant, who worked overtime prior to the injury, was medically restricted from working overtime. See id. The magistrate concluded that evidence of a 40-hour workweek medical restriction was enough to establish causation. Relator argues, by his first and second objections, that evidence of a 40-hour workweek medical restriction is insufficient to prove causation because claimant must show the availability of overtime. While we agree with relator that evidence of overtime availability is relevant to the causation issue, we find some evidence supporting a finding of overtime availability, as discussed below.
 {¶ 6} Claimant has presented some evidence that she was medically restricted from working overtime. Claimant presented Physical Capability Evaluations ("PCEs") that indicated she was medically restricted to 40-hour workweeks because of her condition. By its third and fourth objections to the magistrate's decision, relator argues that the medical restriction has not been established for the entire period because not every PCE specifies a 40-hour workweek limitation. We disagree. We find that it is reasonable to infer from the PCEs that this restriction was continuous. Thus, the PCEs sufficiently provided some evidence of claimant's medical restriction from April 7, 2000 to October 31, 2000.
 {¶ 7} Claimant has also presented some evidence that overtime was available during the period in question. In support of establishing the availability of overtime, claimant submitted an affidavit, with earnings statements attached, of co-worker Cynthia Rose, which indicated that overtime was available. Apparently, after the injury, claimant "returned to the same department in which she had formerly been employed." Relator's merit brief at 8. "She was allowed to perform modified duty, which was consistent with her physical capabilities, as set forth in the PCE forms submitted[.]" Id. Thus, the affidavit of Rose provides some evidence that overtime was available in the department in which claimant worked, pre- and post-injury. Furthermore, to the extent claimant needed to show her desire to work overtime, "[c]laimant's testimony indicating her willingness and desire to work some overtime" provided some evidence that the commission relied upon in making its causation determination. We note that an employer may present evidence that undermines the causal connection, such as evidence that overtime was reduced plant-wide for economic reasons. See Jordan, supra, at ¶ 35. Ultimately, however, the commission alone evaluates evidentiary weight and credibility. Stateex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373, 376. For the foregoing reasons, we overrule relator's objections.
 {¶ 8} Because we find that claimant has presented some evidence that her medical restrictions caused the reduction in earnings, we conclude that the commission did not abuse its discretion in finding that "as a result of the allowed conditions in the instant claim, the claimant has suffered a wage loss."
 {¶ 9} Upon our review of the magistrate's May 16, 2003 decision and independent review of the record, we adopt the magistrate's findings of fact as our own. We also adopt the magistrate's conclusions of law except to the extent they are contrary or inconsistent with the above discussion and analysis. See supra ¶ 5. Furthermore, the objections of relator are overruled. We find that the commission did not abuse its discretion in finding that, as a result of the allowed condition, the claimant has suffered a wage loss. In accordance with the magistrate's decision, relator's request for a writ of mandamus is denied.
Objections overruled; writ denied
Bowman and Lazarus, JJ., concur.
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 10} In this original action, relator, Newell Rubbermaid, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting R.C. 4123.56(B) wage loss compensation to respondent Nancy Dilucca for the period April 7, 2000 through October 31, 2000, and to enter an order denying said compensation.
Findings of Fact
 {¶ 11} 1. On March 7, 2000, Nancy Dilucca ("claimant") sustained an industrial injury while employed with Newell Rubbermaid, Inc. ("relator" or "Rubbermaid"), a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "thoracic strain" and is assigned claim No. 00-548817.
 {¶ 12} 2. On the date of injury, claimant was employed by Rubbermaid as a "product processor" in the Plastics II department. Claimant's regular hourly rate of pay at that position was $11.87. During the year prior to the date of injury, claimant worked a substantial amount of overtime at Rubbermaid.
 {¶ 13} 3. After her injury, claimant sought treatment at the Center for Occupational Medicine ("CFOM"). On April 7, 2000, one of the CFOM physicians completed a Rubbermaid form captioned "Physical Capacity Evaluation" ("PCE"). Rubbermaid's PCE form asks the treating physician:
 {¶ 14} "Please assist us by evaluating this employee's ability to return to his regular job or one that is within his physical capabilities. Please check the appropriate line."
 {¶ 15} On the April 7, 2000 PCE, the physician checked the line indicating "[e]mployee may return with the restrictions indicted below." The April 7, 2000 PCE indicates that claimant can perform sedentary employment. The physician, in his own hand, commented:
 {¶ 16} "Light duty 8 hrs/day
 {¶ 17} "40 hrs/week
 {¶ 18} "4-13-00 10:45/a.m."
 {¶ 19} 4. On April 7, 2000, claimant returned to work at Rubbermaid at a lighter-duty job that paid the same hourly rate, i.e., $11.87 as her former position of employment. From April 7, 2000 through October 31, 2000, claimant worked 40-hour weeks earning $11.87 per hour. (See Rubbermaid's brief at 13.)
 {¶ 20} 5. On April 8, 2002, claimant moved for R.C. 4123.56(B) wage loss compensation. Claimant's motion stated:
 {¶ 21} "It is requested that Ms Dilucca be awarded working wage loss from April 1, 2000 to October 10, 2000. During this time she was able to work 40 hours a week, but was restricted from overtime. It is the loss of the overtime which causes the wage loss. Attached to the Motion are Physical Capability Evaluations signed by the doctors at the center for Occupational Medicine which restricted her to working only 40 hours a week during the time periods."
 {¶ 22} 6. In support of her wage loss motion, claimant submitted 13 PCEs dated April 7, 2000, April 13, 2000, April 27, 2000, May 23, 2000, May 31, 2000, June 27, 2000, July 11, 2000, July 25, 2000, August 8, 2000, August 22, 2000, September 5, 2000, September 19, 2000 and October 10, 2000.
 {¶ 23} 7. The April 27, 2000 PCE indicates that claimant will be scheduled for a return visit on May 11, 2000. However, there is no PCE of record for May 11, 2000. As previously noted, the next PCE is dated May 23, 2000.
 {¶ 24} 8. The June 27, 2000 PCE contains the following physician comments:
 {¶ 25} "Transitional Work
 {¶ 26} "2 hrs regular work 6 hrs
 {¶ 27} "LT work"
 {¶ 28} 9. The July 11, 2000 PCE contains the following physician comments:
 {¶ 29} "Continue Transitional Work
 {¶ 30} "* * *
 {¶ 31} "2 hrs regular duty
 {¶ 32} "6 hrs light duty"
 {¶ 33} 10. The May 31, 2000, June 27, 2000 and July 11, 2000 PCEs, viewed in isolation from the other PCEs of record, do not state that claimant is limited to a 40-hour work week.
 {¶ 34} 11. The PCEs dated April 7, 2000, April 13, 2000, April 27, 2000, July 25, 2000, August 8, 2000, August 22, 2000, September 5, 2000, September 19, 2000 and October 10, 2000 specify that claimant is limited to working a 40-hour week.
 {¶ 35} 12. Claimant also filed a wage loss application. On the application, claimant stated that beginning April 7, 2000, her weekly earnings at Rubbermaid were $474.80 based upon a 40-hour work week at $11.87 per hour (40 × $11.87 = $474.80).
 {¶ 36} 13. Following a May 9, 2002 hearing, the commission, through its staff hearing officer ("SHO") set the claimant's average weekly wage ("AWW") at $569.50 based upon claimant's earnings of $29,613.94 during the fifty-two weeks prior to her date of injury. ($29,613.94 divided by 52 = $569.50). The commission's AWW calculation includes the substantial overtime pay earned by claimant during the year prior to her date of injury.
 {¶ 37} 14. Following a June 13, 2002 hearing, a district hearing officer ("DHO") issued an order denying the claimant's motion for wage loss compensation. The DHO's order states:
 {¶ 38} "Wage loss compensation is denied from 04/07/2000 through 10/31/2000, inclusive.
 {¶ 39} "The District Hearing Officer finds claimant has failed to establish she sustained a wage loss during this period. Claimant testified her former position of employment was `product processor' and she earned $11.87 per hour. During the period of requested wage loss the claimant continued to earn $11.87 per hour while working various positions, including `bar coding' and `scrap sorting' jobs.
 {¶ 40} "Claimant alleges her wage loss resulted from her inability to work greater than 40 hours from 04/07/2000 through 10/31/2000. The District Hearing Officer finds claimant has failed to establish that overtime existed during the requested period of wage loss. There is no documentation in file to support claimant's testimony that the employer mandated overtime or discretionary overtime was offered during the requested period of wage loss."
 {¶ 41} 15. Claimant administratively appealed the DHO's order of June 13, 2002.
 {¶ 42} 16. In support of her appeal, claimant submitted the affidavit of her co-worker, Cynthia Rose. Cynthia Rose averred in her affidavit that, during the week beginning April 2, 2000, she transferred into "department 537, Plastics II" and that from April 2, 2000 through October 2000, she regularly volunteered to work overtime. Cynthia Rose attached her Rubbermaid earnings statements to her affidavit for that time period in order to show the number of hours of overtime she actually worked. Apparently, claimant submitted the affidavit of Cynthia Rose to counter the DHO's finding that "claimant has failed to establish that overtime existed during the requested period of the wage loss."
 {¶ 43} 17. In support of her appeal, claimant also submitted the earnings statements of Rubbermaid employees Bonnie Way, Bonnie Tengler and Joyce Owens. Relator did not submit affidavits from those employees. Apparently, claimant submitted those earning statements to show that department 537 offered overtime during the period of claimant's wage loss claim.
 {¶ 44} 18. In defense of the claimant's appeal, Rubbermaid submitted the affidavit of its workers' compensation administrator, Rebecca J. Buchholz. According to that affidavit, Buchholz reviewed the records for the Plastics II employees for the periods ending January 2, 2000 through April 2, 2000. According to the affidavit, although overtime was offered by Rubbermaid to its Plastics II employees during each week of that period, claimant worked only four hours of overtime and that occurred during the week ending January 23, 2000.
 {¶ 45} 19. Following a July 18, 2002 hearing, a staff hearing officer issued an order that vacates the DHO'S order of June 13, 2002, and grants claimant's wage loss application. The SHO's order states:
 {¶ 46} "Per the claimant's attorney, the period for which the claimant is requesting wage loss compensation is from 04/07/2000 through 10/31/2000, inclusive.
 {¶ 47} "The Hearing Officer finds that the claimant has returned to work other than her former position of employment. Claimant's former position of employment included the ability to perform offered overtime work. Claimant's new position limited the claimant from performing overtime work. The Hearing Officer further finds that as a result of the allowed conditions in the instant claim, the claimant has suffered a wage loss.
 {¶ 48} "Therefore, it is ordered that wage loss compensation under Ohio Revised Code 4123.56(B) is awarded.
 {¶ 49} "Wage loss is granted from 04/07/2000 to 10/31/2000 inclusive (closed period) less the pay periods ending 08/20/2000, 10/08/2000 and 10/15/2000.
 {¶ 50} "The Hearing Officer, in making this finding, has relied upon the following evidence: Dr. Flanagan, claimant's physician's physical capacity evaluations; Wage loss questionnaire; Wage statements; Claimant's testimony indicating her willingness and desire to work some overtime; The failure of the claimant to demonstrate overtime was available the pay period ending 08/20/2000, 10/08/2000 and 10/15/2000; The payroll records from Bonnie R. Way and Cynthia K. Rose.
 {¶ 51} "Upon review and analysis of these reports, and take [sic] the allowed conditions into consideration, this finding was made."
 {¶ 52} 20. On August 15, 2002, another SHO mailed an order refusing Rubbermaid's administrative appeal from the SHO's order of July 18, 2002.
 {¶ 53} 21. On September 20, 2002, relator, Newell Rubbermaid, Inc., filed this mandamus action.
Conclusions of Law
 {¶ 54} Three issues are presented: (1) whether the medical evidence (PCEs) fails to provide some evidence that claimant was medically restricted from working in excess of 40 hours per week for the period May 12, 2000 through July 25, 2000; (2) whether claimant was required to show that overtime work was available at her former position of employment at the Plastics II department during the period of her wage loss claim in order to prove a proximate casual connection between her industrial injury and her diminishment of wages; (3) whether a claimant who has shown that her industrial injury precluded her from working overtime during the period of her wage loss claim must, nevertheless, show that overtime work at her post-injury job was actually available and that she probably would have accepted overtime work had she been medically able to do so.
 {¶ 55} The magistrate finds: (1) the medical evidence (PCEs) does provide some evidence that the claimant was medically restricted from working in excess of 40 hours per week for the period May 12, 2000 through July 25, 2000; (2) the claimant was not required to show that overtime work was available at her former position of employment during the period of her wage loss claim in order to prove causation; (3) a claimant who has shown that her industrial injury precluded her from working overtime during the period of her wage loss claim need not show that overtime work at her post-injury job was actually available and that she probably would have accepted overtime work had she been medically able to do so.
 {¶ 56} Turning to the first issue, it is clear that the PCEs of record provided the commission with some evidence to support a finding that claimant was restricted by her industrial injury from working in excess of 40 hours a week for the entire period of the wage loss award, i.e., from April 7, 2000 through October 31, 2000.
 {¶ 57} The PCE dated April 27, 2000 indicates that claimant will be scheduled for a return visit on May 11, 2000. However, the next PCE is dated May 23, 2000. There is no PCE dated May 11, 2000. Relator suggests that the commission was required to conclude that there is no medical evidence of an industrial restriction for the period May 12 through May 22, 2000 based upon the absence of a PCE dated May 11, 2000. Relator's suggestion lacks merit. There is no requirement that the claimant submit medical evidence of her industrial restrictions on a weekly basis. The commission could view the PCEs dated April 27, 2000 and May 23, 2000 as indicating a continuous period of industrial restrictions.
 {¶ 58} The PCE dated May 31, 2000 indicates that claimant may continue to work with restrictions. However, the physician failed to write, as he had done on previous PCEs, that claimant was restricted to a 40-hour work week. Apparently, relator would conclude that the PCE indicates that the 40-hour per week work restriction has been eliminated as of May 31, 2000 because the physician failed to write the restriction on the May 31, 2000 PCE. The commission was not required to view the May 31, 2000 PCE as relator would view it here. Viewing the totality of the PCE submitted, it was well within the commission's discretion to not accept relator's view of the May 31, 2000 PCE.
 {¶ 59} As previously noted, the June 27 and July 11, 2000 PCEs indicate that relator can transition to working two hours of regular and six hours of light-duty work per day. The commission was not required, as relator here argues, to view the failure of those PCEs to mention the 40-hour per week restriction as an indication that the 40-hour per week restriction had been eliminated.
 {¶ 60} In short, relator's contention that the medical evidence of record, i.e., the PCEs, fail to provide some evidence of a 40 hour per week restriction for the period May 12, 2000 through July 23, 2000 lacks merit.
 {¶ 61} The second issue, as previously noted, is whether the claimant was required to show that overtime work was available at her former position of employment at the Plastics II Department during the period of her wage loss claim in order to prove a proximate casual connection between her industrial injury and her diminishment in wages.
 {¶ 62} It is important to emphasize that this issue is focused on the availability of overtime at the former position of employment rather than the post-injury position where the diminishment of wages occurred.[1] The underlying premise of this issue is the belief that a claimant should not be entitled to compensation due to a medical inability to work overtime when the claimant would not have been offered overtime by the employer had the claimant not been injured and continued to work at the former position of employment.
 {¶ 63} While, at first blush, this underlying premise appears to be sound, upon further consideration, the magistrate finds that it contravenes the rule mandating that the claimant's AWW shall be used to calculate the diminishment of wages upon which compensation is determined.
 {¶ 64} Ohio Adm. Code 4125-1-01 sets forth the commission's rules for wage loss compensation. Ohio Adm. Code 4125-1-01(A) sets forth some definitions that are pertinent here:
 {¶ 65} "(9) `Working wage loss' means the dollar amount of the diminishment in wages sustained by a claimant who has returned to employment which is not his or her former position of employment. However, the extent of the diminishment must be the direct result of physical and/or psychiatric restriction(s) caused by the impairment that is casually related to an industrial injury or occupational disease in a claim allowed under Chapter 4123. of the Revised Code.
 {¶ 66} "* * *
 {¶ 67} "(16) `Present earnings' means the claimant's actual weekly earnings which are generated by gainful employment unless the claimant has substantial variations in earnings. * * *"
 {¶ 68} Ohio Adm. Code 4125-1-01(F) is captioned "Computation of wage loss." It states:
 {¶ 69} "(1) Unless otherwise provided in paragraph (H)(3) of this rule, diminish-ment of wages shall be calculated based on the:
 {¶ 70} "(a) Claimant's average weekly wage at the time of the injury or at the time of the disability due to occupational disease in accordance with the provisions of section 4123.61 of the Revised Code; and
 {¶ 71} "(b) The claimant's present earnings."
 {¶ 72} As previously noted, claimant's AWW includes the overtime that she worked during the year prior to her date of injury. Requiring a claimant to show that overtime work was available at her former position of employment during the period of her wage loss claim, a period that post dates the date of injury is, in effect, requiring a claimant to justify the continuing validity of her AWW based upon post-injury evidence. While claimant indeed attempted to show just that by submitting the affidavit of Cynthia Rose and other evidence, the claimant was not required to do so. Evidence of the overtime that claimant could have worked had she not been injured and had remained at her former position of employment during the period of her wage loss claim is simply irrelevant.
 {¶ 73} The third issue, as previously noted, is whether a claimant who has shown that her industrial injury precluded her from working overtime during the period of her wage loss claim must, nevertheless, show that overtime work at her post-injury job was actually available and that she probably would have accepted overtime work had she been medically able to do so.
 {¶ 74} As previously noted, the PCEs provided the commission with some evidence that claimant was medically restricted from working in excess of 40 hours per week for the period of the wage loss claim, i.e., from April 7, 2000 through October 31, 2000. In short, claimant medically proved that the industrial injury precluded her acceptance of any overtime work at her post-injury job that might have been offered during the period of the wage loss claim. If that is so, then why would the claimant have to further prove that overtime work was actually available for each week of her wage loss claim? Claimant's medical restriction not only precluded her from accepting whatever overtime might have been available at Rubbermaid, it also precluded her from looking for work with a second employer.
 {¶ 75} Hypothetically, if the claimant were not medically restricted from working overtime but, nevertheless, failed to seek available overtime that would eliminate or reduce the diminishment of wages, the claimant would not be entitled to compensation because she would have voluntarily chosen to accept the wage diminishment. However, that situation does not exist in this case.
 {¶ 76} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
Kenneth W. Macke, Magistrate
[1] Rubbermaid argues this issue in its brief at pages 10 through 11. While Rubbermaid does not specify in its brief that the issue focuses on the former position of employment, it is clear from a careful reading of Rubbermaid's brief that it does focus on the former position of employment. At oral argument, Rubbermaid's counsel made it clear that the issue is focused on the former position of employment. Moreover, claimant's counsel submitted the affidavit of Cynthia Rose in order to show the availability of overtime at the former position of employment during the period of the wage loss claim.